# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH 212.446.2300 • FAX 212.446.2350

September 21, 2009

FEDERAL EXPRESS

Hon. Edward C. Reed, Jr.
United States District Judge
United States District Court for the
 District of Nevada
400 South Virginia Street
Reno, Nevada 89501

RECEIVED
CHAMBERS OF
SEP 22 2009
EDWARD C. REED, JR.
SENIOR JUDGE

Kerzner International v. Monarch Casino & Resort, Inc.
Case No. 3:06-CV-00232-ECR-RAM

Dear Judge Reed:

    This Firm is counsel to Plaintiffs in the above-referenced matter. In footnote 37 on page 14 of Defendants' July 3, 2009 Opposition to Plaintiffs' Motion for Partial Summary Judgment, Monarch relies on *Medinol Ltd. V. Neiro Vasx, Inc.*, 67 U.S.P.Q.2d 1205 (T.T.A.B. 2003), for the standard to be applied to claims of fraud in connection with a federal trademark registration. In an August 31, 2009 decision (after the briefing was complete on the motions for summary judgment pending before the Court), the Federal Circuit expressly rejected the *Medinol* standard. A copy of this decision, *In re Bose Corp.*, No. 2008-1448, -- F.3d --, 2009 WL 2709312 (Fed. Cir. Aug. 31, 2009), is enclosed herewith.

                                          Respectfully submitted,

                                          Philip C. Korologos

Enclosure
cc: Mark G. Tratos, Esq. (w/encl.)
 (via facsimile 702-792-9002)

Westlaw

Page 1

--- F.3d ----, 2009 WL 2709312 (C.A.Fed.)
**(Cite as: 2009 WL 2709312 (C.A.Fed.))**

H Only the Westlaw citation is currently available.

United States Court of Appeals,
Federal Circuit.
In re BOSE CORPORATION, Appellant.
No. 2008-1448.

Aug. 31, 2009.

**Background:** Applicant for renewal of the trademark WAVE appealed order of the Trademark Trial and Appeal Board, 2007 WL 4135850, which cancelled the trademark registration in its entirety after finding that applicant committed fraud on the PTO.

**Holding:** The Court of Appeals, Michel, Chief Judge, held that there was no evidence that applicant intended to deceive the PTO.

Reversed and remanded.

West Headnotes

**[1] Trademarks 382T ⇌1322**

382T Trademarks
　　382TVII Registration
　　　　382TVII(B) Proceedings Concerning Federal Registration
　　　　　　382Tk1315 Judicial Review or Intervention
　　　　　　　　382Tk1322 k. Scope of Review. Most Cited Cases
The Court of Appeals for the Federal Circuit reviews the Trademark Trial and Appeal Board's legal conclusions de novo.

**[2] Trademarks 382T ⇌1322**

382T Trademarks
　　382TVII Registration
　　　　382TVII(B) Proceedings Concerning Federal Registration
　　　　　　382Tk1315 Judicial Review or Intervention
　　　　　　　　382Tk1322 k. Scope of Review. Most Cited Cases
The Court of Appeals for the Federal Circuit reviews the Trademark Trial and Appeal Board's factual findings for substantial evidence.

**[3] Trademarks 382T ⇌1382**

382T Trademarks
　　382TVII Registration
　　　　382TVII(D) Misuse of Federal Registration
　　　　　　382Tk1381 False or Fraudulent Registration in General
　　　　　　　　382Tk1382 k. In General. Most Cited Cases
Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application. Lanham Act, § 14(3), 15 U.S.C.A. § 1064(3).

**[4] Trademarks 382T ⇌1389**

382T Trademarks
　　382TVII Registration
　　　　382TVII(D) Misuse of Federal Registration
　　　　　　382Tk1385 Cancellation for Misuse
　　　　　　　　382Tk1389 k. Evidence. Most Cited Cases
A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof; the very nature of the charge of fraud requires that it be proven "to the hilt" with clear and convincing evidence, and there is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party. Lanham Act, § 14(3), 15 U.S.C.A. § 1064(3).

**[5] Trademarks 382T ⇌1382**

382T Trademarks
　　382TVII Registration
　　　　382TVII(D) Misuse of Federal Registration
　　　　　　382Tk1381 False or Fraudulent Registration in General
　　　　　　　　382Tk1382 k. In General. Most Cited Cases
Deception must be willful to constitute fraud in procuring a trademark registration or renewal. Lanham Act, § 14(3), 15 U.S.C.A. § 1064(3).

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 2709312 (C.A.Fed.)
(Cite as: 2009 WL 2709312 (C.A.Fed.))

[6] Trademarks 382T €==>1382

382T Trademarks
    382TVII Registration
        382TVII(D) Misuse of Federal Registration
            382Tk1381 False or Fraudulent Registration in General
                382Tk1382 k. In General. Most Cited Cases
A trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the Patent and Trademark Office (PTO). Lanham Act, § 14(3), 15 U.S.C.A. § 1064(3).

[7] Trademarks 382T €==>1382

382T Trademarks
    382TVII Registration
        382TVII(D) Misuse of Federal Registration
            382Tk1381 False or Fraudulent Registration in General
                382Tk1382 k. In General. Most Cited Cases

Trademarks 382T €==>1384

382T Trademarks
    382TVII Registration
        382TVII(D) Misuse of Federal Registration
            382Tk1381 False or Fraudulent Registration in General
                382Tk1384 k. Evidence. Most Cited Cases
Subjective intent to deceive the Patent and Trademark Office (PTO), however difficult it may be to prove, is an indispensable element in the analysis of whether a trademark has been obtained fraudulently under the Lanham Act; because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence, but such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement. Lanham Act, § 14(3), 15 U.S.C.A. § 1064(3).

[8] Trademarks 382T €==>1384

382T Trademarks
    382TVII Registration
        382TVII(D) Misuse of Federal Registration
            382Tk1381 False or Fraudulent Registration in General
                382Tk1384 k. Evidence. Most Cited Cases
When drawing an inference of intent to deceive the Patent and Trademark Office (PTO), in analyzing whether a trademark has been obtained fraudulently under the Lanham Act, the involved conduct, viewed in light of all the evidence must indicate sufficient culpability to require a finding of intent to deceive. Lanham Act, § 14(3), 15 U.S.C.A. § 1064(3).

[9] Trademarks 382T €==>1384

382T Trademarks
    382TVII Registration
        382TVII(D) Misuse of Federal Registration
            382Tk1381 False or Fraudulent Registration in General
                382Tk1384 k. Evidence. Most Cited Cases
There was no evidence that applicant for renewal of a trademark intended to deceive the Patent and Trademark Office (PTO) in making material misrepresentation to the PTO that the mark was in use in commerce on all goods, including audio tape recorders and players, as required to establish fraud under the Lanham Act; applicant's general counsel explained that, in his belief, applicant's repairing of damaged, previously-sold audio tape recorders and players and returning the repaired goods to the customers met the "use in commerce" requirement for the renewal of the trademark, and testified under oath that he believed the statement was true at the time he signed the renewal application. Lanham Act, § 14(3), 15 U.S.C.A. § 1064(3).

[10] Trademarks 382T €==>1382

382T Trademarks
    382TVII Registration
        382TVII(D) Misuse of Federal Registration
            382Tk1381 False or Fraudulent Registration in General
                382Tk1382 k. In General. Most Cited Cases
There is no fraud in procuring a trademark registration or renewal under the Lanham Act if a false misrepresentation is occasioned by an honest misunder-

--- F.3d ----, 2009 WL 2709312 (C.A.Fed.)
(Cite as: 2009 WL 2709312 (C.A.Fed.))

standing or inadvertence without a willful intent to deceive. Lanham Act, § 14(3), 15 U.S.C.A. § 1064(3).

[11] Trademarks 382T €⇒1389

382T Trademarks
   382TVII Registration
      382TVII(D) Misuse of Federal Registration
         382Tk1385 Cancellation for Misuse
           382Tk1389 k. Evidence. Most Cited Cases
Unless the party seeking cancellation of a trademark registration for fraudulent procurement can point to evidence to support an inference of deceptive intent, it has failed to satisfy the clear and convincing evidence standard required to establish a fraud claim under the Lanham Act. Lanham Act, § 14(3), 15 U.S.C.A. § 1064(3).

[12] Trademarks 382T €⇒1254

382T Trademarks
   382TVII Registration
      382TVII(A) In General
         382Tk1252 Duration of Registration
           382Tk1254 k. Reregistration and Renewal of Registration. Most Cited Cases
The purpose of requiring trademark renewal is to remove from the register automatically marks which are no longer in use. Lanham Trade-Mark Act of 1946, § 8, 15 U.S.C.A. § 1058; Lanham Trade-Mark Act, § 9, 15 U.S.C.A. § 1059.

[13] Trademarks 382T €⇒1386

382T Trademarks
   382TVII Registration
      382TVII(D) Misuse of Federal Registration
         382Tk1385 Cancellation for Misuse
           382Tk1386 k. In General. Most Cited Cases
When a trademark registrant fulfills the obligation to refrain from knowingly making material misrepresentations in procuring a trademark renewal, it is in the public interest to maintain registrations of technically good trademarks on the register so long as they are still in use; because practically all of the user's substantive trademark rights derive from continuing use, when a trademark is still in use, nothing is to be gained from and no public purpose is served by canceling the registration of the trademark. Lanham Trade-Mark Act of 1946, § 8, 15 U.S.C.A. § 1058; Lanham Trade-Mark Act, § 9, 15 U.S.C.A. § 1059.

Trademarks 382T €⇒1800

382T Trademarks
   382TXI Trademarks and Trade Names Adjudicated
      382Tk1800 k. Alphabetical Listing. Most Cited Cases
WAVE.

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.Charles Hieken, Fish & Richardson P.C., of Boston, Massachusetts, argued for appellant. With him on the brief was Amy L. Brosius.

Raymond T. Chen, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for the Director of the United States Patent and Trademark Office. With him on the brief were Thomas V. Shaw and Christina J. Hieber, Associate Solicitors.

Susan J. Hightower, Pirkey Barber LLP, of Austin, Texas, argued for amicus curiae, American Intellectual Property Law Association. With her on the brief was William G. Barber. Of counsel on the brief was James H. Pooley, American Intellectual Property Law Association, of Arlington, Virginia.

Before MICHEL, Chief Judge, DYK, and MOORE, Circuit Judges.

MICHEL, Chief Judge.

*1 The Trademark Trial and Appeal Board ("Board") found that Bose Corporation ("Bose") committed fraud on the United States Patent and Trademark Office ("PTO") in renewing Registration No. 1,633,789 for the trademark WAVE. *Bose Corp. v. Hexawave, Inc.*, 88 USPQ2d 1332, 1338 (T.T.A.B.2007). Bose appeals the Board's order cancelling the registration in its entirety. Because there is no substantial evidence that Bose intended to deceive the PTO in the renewal process, we reverse and remand.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 2709312 (C.A.Fed.)
**(Cite as: 2009 WL 2709312 (C.A.Fed.))**

[5] Mandated by the statute and caselaw, the Board had consistently and correctly acknowledged that there is "a material legal distinction between a 'false' representation and a 'fraudulent' one, the latter involving an intent to deceive, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like." *Kemin Indus., Inc. v. Watkins Prods., Inc.*, 192 USPQ 327, 329 (T.T.A.B.1976). In other words, deception must be willful to constitute fraud. *Smith Int'l*, 209 USPQ at 1043; *see also Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.)*, 43 USPQ2d 1440, 1443 (T.T.A.B.1997); *First Int'l Servs. Corp. v. Chuckles, Inc.*, 5 USPQ2d 1628, 1634 (T.T.A.B.1988); *Giant Food, Inc. v. Standard Terry Mills, Inc.*, 229 USPQ 955, 962 (T.T.A.B.1986).

Several of our sister circuits have also required proof of intent to deceive before cancelling a trademark registration. *See, e.g., Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 996 (9th Cir.2001) (stating that an affidavit was fraudulent only if the affiant acted with scienter); *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877-78 (8th Cir.1994) (per curiam) ("In order to show that an applicant defrauded the PTO the party seeking to invalidate a mark must show that the applicant intended to mislead the PTO."); *Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir.1993) ("To succeed on a claim of fraudulent registration, the challenging party must prove by clear and convincing evidence that the applicant made false statements with the intent to deceive [the PTO]."); *San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 472 (10th Cir.1988) (stating that in determining whether a statement is fraudulent, courts must focus on the "declarant's subjective, honestly held, good faith belief" (internal quotation marks and emphasis omitted)); *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir.1982) ("Fraud will be deemed to exist only when there is a deliberate attempt to mislead the Patent Office into registering the mark.").

*3 The Board stated in *Medinol v. Neuro Vasx, Inc.* that to determine whether a trademark registration was obtained fraudulently, "[t]he appropriate inquiry is ... not into the registrant's subjective intent, but rather into the objective manifestations of that intent." 67 USPQ2d 1205, 1209 (T.T.A.B.2003). We understand the Board's emphasis on the "objective manifestations" to mean that "intent must often be inferred from the circumstances and related statement made." *Id.* (internal quotation marks omitted) (quoting *First Int'l Serv.*, 5 USPQ2d at 1636). We agree. However, despite the long line of precedents from the Board itself, from this court, and from other circuit courts, the Board went on to hold that "[a] trademark applicant commits fraud in procuring a registration when it makes material representations of fact in its declaration which it knows or *should know* to be false or misleading." *Id.* (emphasis added). The Board has since followed this standard in several cancellation proceedings on the basis of fraud, including the one presently on appeal. *See Bose*, 88 USPQ2d at 1334.

By equating "should have known" of the falsity with a subjective intent, the Board erroneously lowered the fraud standard to a simple negligence standard. *See Heto v. Glock, Inc.*, 565 F.3d 1126, 1155 (9th Cir.2009) ("Knowing conduct thus stands in contrast to negligent conduct, which typically requires only that the defendant knew or *should have known* each of the facts that made his act or omission unlawful ...."); *see also Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (explaining that in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), the Court "declined the invitation to impose liability under what amounted to a negligence standard-holding the district liable for its failure to react to teacher-student harassment of which it knew or *should have* known. Rather, [the Court] concluded that the district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge.").

[6] We have previously stated that "[m]ere negligence is not sufficient to infer fraud or dishonesty." *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1582 (Fed.Cir.1991). We even held that "a finding that particular conduct amounts to 'gross negligence' does not of itself justify an inference of intent to deceive." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed.Cir.1988) (en banc). The principle that the standard for finding intent to deceive is stricter than the standard for negligence or gross negligence, even though announced in patent inequitable conduct cases, applies with equal force to

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 2709312 (C.A.Fed.)
(Cite as: 2009 WL 2709312 (C.A.Fed.))

trademark fraud cases. After all, an allegation of fraud in a trademark case, as in any other case, should not be taken lightly. *San Juan* Prods., 849 F.2d at 474 (quoting *Anheuser-Busch, Inc. v. Bavarian Brewing Co.*, 264 F.2d 88, 92 (6th Cir.1959)). Thus, we hold that a trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO.

*4 [7][8] Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis. Of course, "because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence. But such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed.Cir.2008). When drawing an inference of intent, "the involved conduct, viewed in light of all the evidence ... must indicate sufficient culpability to require a finding of intent to deceive." *Kingsdown*, 863 F.2d at 876.

The Board in *Medinol* purportedly relied on this court's holding in *Torres* to justify a "should have known" standard. The Board read *Torres* too broadly. In that case, Torres obtained the trademark registration for "Las Torres" below a tower design. *Torres*, 808 F.2d at 47. The trademark was registered for use on wine, vermouth, and champagne. *Id.* In the renewal application, Torres submitted an affidavit stating that the mark as registered was still in use in commerce for each of the goods specified in the registration. *Id.* He even attached a specimen label with the registered mark displayed. *Id.* In fact, Torres was not using the mark as registered. *Id.* Instead, five years prior to the renewal application, Torres had admittedly altered the mark to "Torres" in conjunction with a different tower design. *Id.* In addition, Torres knew that even the altered mark was in use only on wine. *Id.* In other words, the registrant knowingly made false statements about the trademark and its usage when he filed his renewal application. *Id.*

True, the court concluded that

If a registrant files a verified renewal application stating that his registered mark is currently in use in interstate commerce and that the label attached to the application shows the mark as currently used when, in fact, he knows or should know that he is not using the mark as registered and that the label attached to the registration is not currently in use, he has knowingly attempted to mislead the PTO.

*Id.* at 49. However, one should not unduly focus on the phrase "should know" and ignore the facts of the case, i.e., the registrant "knows." Doing so would undermine the legal framework the court set out in *Torres*. Indeed, in *Torres*, the court cited various precedents-some persuasive, others binding on the court-and reemphasized several times that (1) fraud in trademark cases "occurs when an applicant knowingly makes false, material representations," (2) the Lanham Act imposes on an applicant the obligation not to "make *knowingly* inaccurate or *knowingly* misleading statements," and (3) a registrant must also "refrain from knowingly making false, material statements." *Id.* at 48. The "should know" language, if it signifies a simple negligence or a gross negligence standard, is not only inconsistent with the framework set out elsewhere in Torres, but would also have no precedential force as it would have conflicted with the precedents from CCPA. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed.Cir.1988). Certainly, the prior CCPA decisions cited in the *Torres* opinion were precedents binding on the Torres court. *See S. Corp. v. United States*, 690 F.2d 1368, 1369 (Fed.Cir.1982). In fact, they still bind us because they have never been overturned en banc.[FN2]

*5 *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336 (Fed.Cir.1997) further supports our reading that the *Torres* holding does not deviate from the established rule that intent to deceive is required to find fraud. In *Metro Traffic Control*, the court cited *Torres* and reaffirmed that fraud can only be found if there is "a willful intent to deceive." 104 F.3d at 340. As a result, the court agreed with the Board that the applicant's statements, "though false, were not uttered with the intent to mislead the PTO." *Id.* at 340-41. Because the applicant's "misstatements did not represent a 'conscious effort to obtain for his business a registration to which he knew it was not entitled,' " the court affirmed the Board's ruling of no fraud. *Id.* at 341; *see also L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed.Cir.1999) (remanding the case so the district court may determine whether the trademark applicant "knowingly submitted a false

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 2709312 (C.A.Fed.)
(Cite as: 2009 WL 2709312 (C.A.Fed.))

declaration with an intent to deceive").

[9] Applying the law to the present case, Mr. Sullivan, who signed the application, knew that Bose had stopped manufacturing and selling audio tape recorders and players at the time the Section 8/9 renewal was filed. Therefore, the statement in the renewal application that the WAVE mark was in use in commerce on all the goods, including audio tape recorders and players, was false. Because Bose does not challenge the Board's conclusion that such a statement was material, we conclude that Bose made a material misrepresentation to the PTO.

[10][11] However, Mr. Sullivan explained that in his belief, Bose's repairing of the damaged, previously-sold WAVE audio tape recorders and players and returning the repaired goods to the customers met the "use in commerce" requirement for the renewal of the trademark. The Board decided that Bose's activities did not constitute sufficient use to maintain a trademark registration. *See Bose,* 88 USPQ2d at 1335-37. It also found Sullivan's belief not reasonable. *Id.* at 1338. We do not need to resolve the issue of the reasonableness as it is not part of the analysis. There is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive. *Smith Int'l,* 209 USPQ at 1043. Sullivan testified under oath that he believed the statement was true at the time he signed the renewal application. Unless the challenger can point to evidence to support an inference of deceptive intent, it has failed to satisfy the clear and convincing evidence standard required to establish a fraud claim.

[12][13] We hold that Bose did not commit fraud in renewing its WAVE mark and the Board erred in canceling the mark in its entirety. Indeed, the purpose of the Section 8/9 renewal is " 'to remove from the register automatically marks which are no longer in use.' " *Torres,* 808 F.2d at 48 (quoting *Morehouse Mfg. Corp. v. J. Strickland & Co.,* 56 C.C.P.A. 946, 407 F.2d 881, 887 (CCPA 1969)). When a trademark registrant fulfills the obligation to refrain from knowingly making material misrepresentations, "[i]t is in the public interest to maintain registrations of technically good trademarks on the register so long as they are still in use." *Morehouse,* 407 F.2d at 888. Because "practically all of the user's substantive trademark rights derive" from continuing use, when a trademark is still in use, "nothing is to be gained from and no public purpose is served by cancelling the registration of" the trademark.[FN3] *Id.*

*6 We agree with the Board, however, that because the WAVE mark is no longer in use on audio tape recorders and players, the registration needs to be restricted to reflect commercial reality. *See Bose,* 88 USPQ2d at 1338. We thus remand the case to the Board for appropriate proceedings.

### III. CONCLUSION

For these reasons, the Board's decision is reversed and remanded.

### IV. COSTS

Each party shall bear its own costs.

*REVERSED and REMANDED*

> FN1. Federal trademark registrations issued on or after November 16, 1989, remain in force for ten years, and may be renewed for ten-year periods. To renew a registration, the owner must file an Application for Renewal under Section 9. In addition, at the end of the sixth year after the date of registration and at the end of each successive ten-year period after the date of registration, the owner must file a Section 8 Declaration of Continued Use, "an affidavit setting forth those goods or services recited in the registration on or in connection with which the mark is in use in commerce ...." 15 U.S.C. § 1058(b)(1); *see also, id.* §§ 1058, 1059.

> FN2. The PTO argues that under *Torres,* making a submission to the PTO with reckless disregard of its truth or falsity satisfies the intent to deceive requirement. We need not resolve this issue here. Before Sullivan submitted his declaration in 2001, neither the PTO nor any court had interpreted "use in commerce" to exclude the repairing and shipping repaired goods. Thus, even if we were to assume that reckless disregard qualifies, there is no basis for finding Sullivan's conduct reckless.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2009 WL 2709312 (C.A.Fed.)
**(Cite as: 2009 WL 2709312 (C.A.Fed.))**

> FN3. Indeed, even though the Board cancelled the registration of the WAVE trademark, it continued to analyze Bose's common law right in the mark. Eventually, the Board found likelihood of confusion and rejected Hexawave's application to register trademark HEXAWAVE. *Bose,* 88 USPQ2d at 1342-43.

C.A.Fed.,2009.
In re Bose Corp.
--- F.3d ----, 2009 WL 2709312 (C.A.Fed.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.